C.A. No. 11-50417

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SALVADOR HERNANDEZ-ESTRADA,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Southern District of California
Honorable Barry Ted Moskowitz, District Judge

<u>BRIEF FOR APPELLEE UNITED STATES</u>

LAURA E. DUFFY
United States Attorney

BRUCE R. CASTETTER
Assistant U.S. Attorney
Chief, Appellate Section
Criminal Division

DAVID CURNOW
Assistant U.S. Attorney

VICTOR P. WHITE
Assistant U. S. Attorney

880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-8439/6775

Attorneys for Plaintiff-Appellee
United States of America

TOPICAL INDEX

Page

TABLE OF AUTHORITIES                                                        v

I       QUESTIONS  PRESENTED                                                1

II      JURISDICTION                                                        1

        A.      BASIS FOR SUBJECT MATTER JURISDICTION
                IN THE DISTRICT COURT                                       1

        B.      BASIS FOR JURISDICTION IN THE COURT OF
                APPEALS                                                     2

        C.      THE NOTICE OF APPEAL WAS TIMELY                             2

        D.      BAIL STATUS                                                 2

III     STATEMENT OF THE CASE                                               3

        A.      PRIOR PROCEEDINGS                                           3

        B.      STATEMENT OF THE FACTS                                      4

                1.      The Crime                                           4

                2.      Hernandez-Estrada's Criminal History                5

                3.      Hernandez-Estrada's Immigration History             5

IV      SUMMARY OF ARGUMENT                                                 6

V       ARGUMENT                                                            8

        A.      INTRODUCTION                                                8

        B.      THERE WERE NO SUBSTANTIAL VIOLATIONS OF THE
                JSSA WHICH REQUIRE DISMISSAL OF ALL INDICTMENTS
                RETURNED BY GRAND JURIES                                    10

                1.      Introduction                                        10

i

<u>TOPICAL INDEX</u> (Continued)

|   |   |   | Page |
|---|---|---|---|
| 2. | Standard of Review | | 11 |
| 3. | The Merits | | 12 |
| | a. | Jury Selection and Service Act of 1968 | 12 |
| | | (1) Constitutional Violation of JSSA Requires Showing of Underrepresentation | 12 |
| | | (2) Only Substantial Statutory Violations Qualify | 12 |
| | | (3) Hernandez-Estrada Is Not Entitled to a Jury of His Choosing | 14 |
| | b. | Jury Service Requires English Proficiency | 14 |
| | c. | English Language Proficiency in Southern District of California | 17 |
| | d. | Hispanics Who Indicated That They Lack English Language Proficiency | 20 |
| | | (1) Overview of Questionnaires and Jury Wheel Data | 20 |
| | e. | Hernandez-Estrada Does Not Meet His Burden of Showing That the Outdated Question About English Language Proficiency on the Juror Questionnaire Amounts to a Substantial Violation of JSSA | 21 |
| | | (1) Hernandez-Estrada Fails To Show Arbitrariness In the Jury Selection Process | 21 |
| | | (2) Flawed Assumption About Education and Occupation as a Proxy for Language Proficiency | 23 |
| | f. | JSSA Does Not Require An Error-Free Process | 25 |

<u>TOPICAL INDEX</u> (Continued)

Page

g.    Alleged Failure to Supervise Jury Clerks Does Not
Amount to Substantial Violation of JSSA    26

h.    An Alleged Lack of Discretionary Follow-up With
Prospective Jurors Who Did Not Indicate Their
Race/Ethnicity Does Not Excuse Hernandez-Estrada
From His Burden of Showing a Substantial Violation
of the JSSA    29

j.    Delayed Completion of Jury Selection Plan
Forms Does Not Excuse Hernandez-Estrada From
His Burden of Showing a Substantial Violation
of the JSSA    31

k.    Summary    32

C.    THERE IS NO EVIDENCE THAT DEMONSTRATES
THAT THE JSSA HAS BEEN VIOLATED BY USING
ONLY VOTER LISTS TO SELECT MEMBERS OF THE
GRAND JURIES    32

1.    Introduction    32

2.    Standard of Review    32

3.    The Merits    33

a.    Introduction    33

b.    Exclusive Use of Voter Registration Lists    33

c.    Supplementation by DMV Lists    37

D.    THERE IS NO EVIDENCE THAT DEMONSTRATES
THAT THE FIFTH AND SIXTH AMENDMENTS HAVE
BEEN VIOLATED BY UNDERREPRESENTATION OF
MINORITY GROUPS ON THE GRAND JURIES    38

1.    Introduction    38

iii

<u>TOPICAL INDEX</u> (Continued)

<u>Page</u>

| | | | |
|---|---|---|---:|
| | 2. | Standard of Review | 38 |
| | 3. | The Merits | 38 |
| VI | CONCLUSION | | 42 |
| CERTIFICATE OF COMPLIANCE | | | |
| STATEMENT OF RELATED CASES | | | |
| CERTIFICATE OF SERVICE | | | |

TABLE OF AUTHORITIES

Cases                                                                 Page

Duren v. Missouri,
        439 U.S. 357 (1979)                                            39

Floyd v. Garrison,
        996 F.2d 947 (8th Cir. 1993)                                   35

Horne v. Flores,
        557 U.S. 433 (2009)                                      19, 20, 21

People v. Eubanks,
        53 Cal. 4th 110 (Cal. 2011)                                  17, 18

Taylor v. Louisiana,
        419 U.S. 522 (1975)                                       14, 15, 30

United States v. Aponte-Suarez,
        905 F.2d 483 (1st Cir. 1990)                                   16

United States v. Artero,
        121 F.3d 1256 (9th Cir. 1997)                               9, 18, 19

United States v. Bearden,
        659 F.2d 590 (5th Cir. 1981)                                 25, 29

United States v. Benmuhar,
        658 F.2d 14 (1st Cir. 1981)                                    16

United States v. Brady,
        579 F.2d 1121 (9th Cir. 1978)                         15, 34, 35, 36

United States v. Brummitt,
        665 F.2d 521 (5th Cir. 1981) (unpublished)                     35

United States v. Campbell,
        544 F.3d 577 (5th Cir. 2008)                                   17

United States  v. Candelaria-Silva,
        166 F.3d 19 (1st Cir. 1999)                                    15

TABLE OF AUTHORITIES (Continued)

Cases                                                        Page

United States v. Cannady,
    54 F.3d 544 (9th Cir. 1995)                          12, 39

United States v. Carmichael,
    560 F.3d 1270 (11th Cir. 2009)                           28

United States v. Cecil,
    836 F.2d 1431 (4th Cir. 1998)                        35, 36

United States v. Changco,
    1 F.3d 837 (9th Cir. 1993)                           16-17

United States v. De La Paz-Rentas,
    613 F.3d 18 (1st Cir. 2010)                          15-16

United States v. Erickson,
    75 F.3d 470 (9th Cir. 1996)                             13

United States v. Esquivel,
    88 F.3d 722 (9th Cir. 1996)            9, 13, 14, 15, 34, 39

United States v. Evans,
    526 F.2d 701 (5th Cir. 1976)                     24, 25, 28

United States v. Flores-Rivera,
    56 F.3d 319 (1st Cir. 1995)                             16

United States v. Garcia,
    No. 96-20149 1997 WL 450169 (5th Cir. 1997) (unpublished)     35, 37

United States v. Goodlow,
    597 F.2d 159 (9th Cir. 1979)                         24, 28

United States v. Jerra,
    No. 06-50081, 2007 WL 580099 (9th Cir. 2007) (unpublished)     16

United States v. Kleifgen,
    557 F.2d 1293 (9th Cir. 1977)                           33

<u>TABLE OF AUTHORITIES</u> (Continued)

<u>Cases</u> <u>Page</u>

United States v. Layton,
    519 F. Supp. 946 (N.D. Cal. June 24, 1981)        27

United States v. Lewis,
    10 F.3d 1086 (4th Cir. 1993)        36

United States v. Luong,
    255 F. Supp. 2d 1123 (E.D. Cal. 2003)        36

United States v. Marcano,
    508 F. Supp. 462 (D. Puerto Rico 1980)        31

United States v. Martinez-Orosco,
    215 Fed. Appx. 693, 2006 WL 3836133 (9th Cir. 2006) (unpublished)        9

United States v. Maskeny,
    609 F.2d 183 (5th Cir. 1980)        24, 28

United States v. Nelson,
    718 F.2d 315 (9th Cir. 1983)        13, 14, 15, 25, 27

United States v. Odeneal,
    517 F.3d 406 (6th Cir. 2008)        35, 38

United States v. Okiyama,
    521 F.2d 601 (9th Cir. 1975)        15

United States v. Paulk,
    372 Fed. Appx. 971 (11th Cir. 2010) (unpublished)        16

United States v. Perry,
    152 F.3d 900 (8th Cir. 1998) (unpublished)        35, 37

United States v. Potter,
    552 F.2d 901 (9th Cir. 1977)        14

United States v. Pritt,
    No. 11-10909, 2012 WL 265927 (11th Cir. 2012) (unpublished)        37

TABLE OF AUTHORITIES (Continued)

| Cases | Page |
|---|---|
| United States v. Rioux,<br>97 F.3d 648 (2d Cir. 1996) | 21, 25, 31, 32, 37 |
| United States v. Rioux,<br>930 F. Supp. 1558 (D. Conn. 1995) | 36 |
| United States v. Rodriguez,<br>581 F.3d 775 (8th Cir. 2009) | 9-10 |
| United States v. Rodriguez-Lara,<br>421 F.3d 932 (9th Cir. 2005) | 11 |
| United States v. Ross,<br>468 F.2d 1213 (9th Cir. 1972) | 34 |
| United States v. Sanchez-Lopez,<br>879 F.2d 541 (9th Cir.1989) | 10, 11, 12, 33, 39 |
| United States v. Santos,<br>588 F.2d 1300 (9th Cir. 1975) | 14, 29, 30 |
| United States v. Speer,<br>30 F.3d 605 (5th Cir. 1994) | 16 |
| United States v. Suttiswad,<br>696 F.2d 645 (9th Cir. 1982) | 40 |
| United States v. Test,<br>550 F.2d 577 (10th Cir. 1976) | 26 |
| United States v. Tijerina,<br>446 F.2d 675 (10th Cir. 1971) | 26 |
| United States v. Torres-Hernandez,<br>447 F.3d 699 (9th Cir.  2006) | 9, 38 |

Constitution and Statutes

| Fifth Amendment | 1, 38, 41 |
|---|---|

TABLE OF AUTHORITIES (Continued)

| Constitution and Statutes | Page |
|---|---|
| Sixth Amendment | 1, 10, 11, 12, 39, 40, 41 |
| 8 U.S.C. § 1326(a) | 3, 4 |
| 8 U.S.C. § 1326(b) | 3, 4 |
| 18 U.S.C. § 3231 | 2 |
| 28 U.S.C. § 1291 | 2 |
| 28 U.S.C. § 1861 | 12 |
| 28 U.S.C. § 1862 | 7 |
| 28 U.S.C. § 1863(b)(2) | 35 |
| 28 U.S.C. § 1864(a) | 30, 31 |
| 28 U.S.C. § 1865(b)(2) | 14, 15 |
| 28 U.S.C. § 1865(b)(3) | 14, 15 |
| 28 U.S.C. § 1867(d) | 10 |
| Cal. Civ. Proc. Code § 203 | 17 |
| Cal. Health & Safety Code § 11351.5 | 5 |
| Cal. Health & Safety Code § 11360 | 5 |
| Cal. Penal Code § 417(b) | 5 |
| Cal. Veh. Code § 14601.2(a) | 5 |
| Cal. Veh. Code § 23152(b) | 5 |
| Jury Service and Selection Act | 1, 6, 9, passim |
| Equal Protection Clause | 38 |

ix

<u>TABLE OF AUTHORITIES</u> (Continued)

| <u>Legislative Material</u> | <u>Page</u> |
|---|---|
| 1968 U.S. Code Cong. & Admin. News, p. 1795 | 37 |
| H.R. Rep. No. 90-1076 (1968), <u>reprinted in</u><br>1968 U.S.C.C.A.N. 1792, 1795-1796 | 12, 15, 25, 31, 35 |
| H.R.Rep. No. 90-1076, 90th Cong., 2d Sess.,<br>*reprinted in* 1968 U.S. Code Cong. & Ad. News 1792, 1794 | 13 |

<u>Rules</u>

| | |
|---|---|
| Fed. R. App. P. 4(b) | 2 |
| 9th Cir. R. 30-1.10 | 4 |
| Southern District of California Local Civil Rule 83.10(c)(4) | 33 |

<u>Miscellaneous</u>

| | |
|---|---|
| Rodriguez, <u>Language and Participation</u> 94 Cal. L. Rev. 687, 693 (2006) | 20 |

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | C.A. No. 11-50417 |
| | ) | D.C. No. 10CR0558-BTM |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SALVADOR HERNANDEZ-ESTRADA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

I

QUESTIONS PRESENTED

A.     Whether the district court properly found that Hernandez-Estrada did not meet his burden under the Jury Service and Selection Act of 1968 ("JSSA") for dismissal of all indictments in the Southern District of California for procedural irregularities in the juror selection process.

B.     Whether the voter registration lists used for juror array selection need to be supplemented from other sources.

C.     Whether it has been demonstrated that the Fifth and Sixth Amendments have been violated by underrepresentation of minority groups on the grand juries.

II

JURISDICTION

A.     BASIS FOR SUBJECT MATTER JURISDICTION IN THE
         DISTRICT COURT

Salvador Hernandez-Estrada ("Hernandez-Estrada") appeals from an October 3, 2011, judgment imposed by the Honorable Barry Ted Moskowitz,

United States District Judge for the Southern District of California, following Hernandez-Estrada's conviction for deported alien found in the United States, in violation of 8 U.S.C. § 1326.[1] [ER 45-48.] On October 24, 2011, the district court issued an amended judgment correcting the spelling of Hernandez-Estrada's first name. [ER 39-42.] The district court had original jurisdiction under 18 U.S.C. § 3231.

B.    <u>BASIS FOR JURISDICTION IN THE COURT OF APPEALS</u>

This Court has jurisdiction over appeals from final judgments under 28 U.S.C. § 1291. A judgment of conviction in a federal criminal case is a final order subject to appeal under 28 U.S.C. § 1291.

C.    <u>THE NOTICE OF APPEAL WAS TIMELY</u>

Federal Rule of Appellate Procedure 4(b) requires that a notice of appeal in a criminal case be filed in the district court within 14 days after the entry of judgment or order appealed from. The judgment in this case was filed on October 3, 2011. [ER 45-48.] Hernandez-Estrada filed a timely Notice of Appeal on October 4, 2011. [ER 43-44.]

D.    <u>BAIL STATUS</u>

Hernandez-Estrada is currently serving a 37-month sentence. His projected release date, according to the Bureau of Prisons website, is August 15, 2012.

---

[1]    "ER" refers to Hernandez-Estrada Excerpts of Record.

2

III

STATEMENT OF THE CASE

A.     PRIOR PROCEEDINGS

On February 18, 2010, a federal grand jury from the 2009 jury wheel in the Southern District of California returned an Indictment charging Hernandez-Estrada with deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b).  [ER 251-52.]  On March 2, 2010, Hernandez-Estrada was arraigned on the Indictment and entered a plea of not guilty.  [ER 622.]

On June 4, 2010, Hernandez-Estrada filed a motion for discovery from the jury administrator on English-language responses to juror qualification questionnaires and to produce the AO-12, the Report on Operation of the Jury Selection Plan, ("AO-12") for the 2009 jury wheel.  [ER 623-24.]  The latter request was later amended for raw data.  [ER 624.]  On July 21, 2010, the district court authorized the examination of juror questionnaires from which the January 2010 grand jury was selected.  [Id.]  Hernandez-Estrada renewed his motion for the AO-12 for the 2009 jury wheel, which the district court granted on September 15, 2010, and the jury clerk was ordered to prepare the AO-12 and provide it to the parties.  [ER 625-26.]

On November 10, 2010, Hernandez-Estrada filed a motion to dismiss the Indictment for violations of the JSSA, as well as violations of the Fifth and Sixth Amendments.  The United States filed its response on February 14, 2011.  After hearing argument, the district court on March 25, 2011, issued a written decision denying Hernandez-Estrada's motion to dismiss the Indictment.  [ER 1-19.]  As the

3

district court had denied a similar challenge to the jury selection process in United States v. Jose Garcia-Arellano, No. 08CR2876 (S.D. Cal. June 9, 2009) ("Garcia-Arellano, June 9, 2009, Order") that contained many of the same issues presented here, the district court incorporated its ruling in Garcia-Arellano by reference in the instant case. [ER 4, 20-38.] The indictment in Garcia-Arellano was eventually dismissed and there was no appeal.

On April 14, 2011, Hernandez-Estrada was convicted of violating 8 U.S.C. § 1326(a) and (b), following a jury trial.

On October 3, 2011, Hernandez-Estrada was sentenced to 37 months' custody. [ER 39-42, 45-48.]

B.    STATEMENT OF THE FACTS

1.    The Crime

On December 9, 2009, Hernandez-Estrada was encountered by a Border Patrol agent in an area north of the U.S./Mexico border in the El Centro section. [PSR 1.][2] After conducting a field interview, the Border Patrol agent determined that Hernandez-Estrada was a Mexican citizen with no legal right to enter or remain in the United States. [Id.]

---

[2]    "PSR" refers to the Amended Presentence Report. [CR 149.] Four copies of the Amended PSR will be mailed this Court under seal, pursuant to 9th Cir. Rule 30-1.10. "CR" refers to the Clerk's Record.

4

2.    <u>Hernandez-Estrada's Criminal History</u>

Hernandez-Estrada was convicted on February 8, 1996, of a felony violation of Cal. Health & Safety Code § 11351.5, possession of cocaine base for sale, and imposition of sentence was suspended with the condition that he serve 181 days jail and 36 months' probation.  [PSR 2.]  He was also convicted on May 30, 2001, of a felony violation of Cal. Health & Safety Code § 11360, transportation of marijuana, and sentenced to 180 days' jail and 36 months' probation, which was later revoked on April 28, 2006, and he was sentenced to 365 days' jail.  [PSR 3.]  On May 16, 2006, he was convicted of a misdemeanor violation of Cal. Veh. Code § 23152(b), driving under the influence, and sentenced to 160 days' jail and 48 months; probation, which was later revoked on November 3, 2008.  [<u>Id.</u>]  On June 6, 2006, Hernandez-Estrada was convicted of a misdemeanor violation of Cal. Veh. Code § 14601.2(a), driving with a suspended license, and sentenced to 90 days' jail.  [<u>See</u> PSR 3.]   On November 3, 2008, Hernandez-Estrada was convicted of a felony violation of Cal. Penal Code § 417(b), exhibiting a loaded firearm, and sentenced to 2 years' prison. [PSR 4.]

3.    <u>Hernandez-Estrada's Immigration History</u>

Hernandez-Estrada was lawfully excluded, deported and removed from the United States to Mexico October 8, 2009, and on October 15, 2009.  [PSR 1, 4.]

5

IV

SUMMARY OF THE ARGUMENT

Hernandez-Estrada's claim that the flaws with the jury selection of Hispanics amount to a constitutional and substantial violation of the JSSA is wrong. Most of his arguments are aimed at a statutory violation of the JSSA based on an outdated question on the juror questionnaire about English language proficiency and the alleged lack of supervision of jury clerks screening responses to that question. The district court was already familiar with many of the issues raised here as it had previously denied in 2009 a similar challenge, and issued a series of recommendations for improving the jury selection process. Here, the district court properly determined any errors were at most technical mistakes. Indeed, Hernandez-Estrada does not show that such flaws frustrate the goals of the JSSA by resulting in impermissible discrimination or arbitrariness as the district court found there was "no evidence that the jury clerk was using subjective criteria in disqualifying the jurors[.]" [ER 13.] In fact, the number of Hispanic or Latino prospective jurors who indicated a lack of English language proficiency is consistent with the demographics of limited English language proficiency population in the Southern District of California. The district court noted that "the level of English language ability needed to serve as a juror is difficult to quantify." [Id.] Additionally, irrespective of race or ethnicity, prospective jurors who indicated a lack of English language proficiency often explained how their limited English language ability would impair their ability to exercise jury duties.

6

The district court properly found that any violation of the JSSA for failure to return juror questionnaires that do not contain race/ethnicity information is not a substantial violation. [ER 14.] The district court properly found that the JSSA does not specify which omissions require return of the questionnaire, allows for discretion in requesting follow up to complete it, and determined that "such information is not essential to the qualification decision." [Id.]

The dismissal of indictments in the Southern District of California should not be ordered where procedural errors made during the process of selecting jurors do not raise the possibility of frustrating the purpose of the JSSA, which is to prevent discrimination on account of "race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862. Here, while the district court acknowledged that there are flaws in the selection process, it properly determined that Hernandez-Estrada did not establish "a violation of a constitutional magnitude or a substantial violation of the JSSA." [ER 2.]

There is no need to supplement the voter registration lists used to assemble the jury array with other sources. The use of supplemental sources should be used only when the voter lists deviate substantially from the makeup of the local population, and the use of sources other than voter lists will be the exception rather than the rule. The fact that members of certain minority groups tend to register to vote in smaller numbers does not qualify as meriting an exception.

Hernandez-Estrada has failed to demonstrate that the Fifth and Sixth Amendments have been violated by underrepresentation of minority groups on the

7

grand juries. Furthermore, he admits as much, blaming his failure on inadequate and poor record keeping by the District Court Clerk's Office.

V

ARGUMENT

A.    INTRODUCTION

Before responding to Hernandez-Estrada's lengthy opening brief, we feel that various observations are appropriate.

First, as exemplified by the Motion to Dismiss the Indictment and Appellant's Opening Brief ("AOB") filed on behalf of Hernandez-Estrada, for at least the past 15 years, defense counsel, through various defendants, has been trying to establish that certain ethnic groups are unfairly underrepresented on the jury wheel from which grand jurors are selected, and that the alleged unbalance has denied various defendants various constitutional (and other) rights which requires the dismissal of indictments returned by said grand juries.[3] See, e.g., United States v. Torres-Hernandez, 447 F.3d 699 (9th Cir. 2006); United States v. Artero, 121 F.3d 1256 (9th Cir. 1997); United States v. Esquivel, 88 F.3d 722 (9th Cir. 1996). See also United States v. Martinez-Orosco, 215 Fed. Appx. 693 (9th Cir. 2006) (unpublished); Garcia-Arellano, June 9, 2009, Order [ER 20-38]; Garcia-Arellano Motion to Dismiss Indictment. [SER 1-

---

[3]    As used in this brief "defense counsel" is a short-hand, generic term for Federal Defenders of San Diego, Inc. Hernandez-Estrada's present attorney has been involved in the last two efforts.

8

47.][4] The attacks have been uniformly unsuccessful. Torres-Hernandez, 447 F.3d at 706; Artero, 121 F.3d at 1262; Esquivel, 88 F.3d at 728; Martinez-Orosco, No. 05-50432, 2006 WL 3836133 at *1-2; Garcia-Arellano June 9, 2009, Order at 19 [ER 38] (concluding that Hispanics have been overrepresented on each of the qualified jury wheels between 2001 and 2007, and that there was no constitutional violation regarding African-Americans' representation, Order at 7-8). [ER 26-27.]

Second, the vast bulk of the AOB is an attempt to establish speculative, alleged violations of the JSSA in individual cases. The AOB then struggles to explain why those occurrences are "substantial violations" requiring dismissal of all indictments returned by all grand juries selected using the alleged violative criteria.

Third, defense counsel in this appeal has now relegated its constitutional contentions to a scant, tail-end, unproductive three and one-half pages. [AOB 62-66.] Basically, defense counsel admits that they cannot prove constitutional violations. We would be remiss if we did not initially note that concerning alleged violations of the JSSA, "[t]he test for a constitutionally selected jury is the same whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act." United States v. Sanchez-Lopez, 879 F.2d 541, 546 (9th Cir. 1989). Therefore, if an underrepresentation cannot be established under the Sixth Amendment, the JSSA claim should also fail. See United States v. Rodriguez, 581

---

[4] "SER" refers to Appellee United States' Supplemental Excerpts of the Record.

9

F.3d 775, 790-91 (8th Cir. 2009) ("Since the <u>Duren</u> [Sixth Amendment] challenge fails, so must the JSSA claim.").

Fourth, during the last 15 years, to our knowledge, there have been no allegations that Hispanics, African-Americans and/or Asians have been treated unfairly by the federal grand juries in this district.[5]  No one has alleged that more members of those groups have been indicted than members of other ethnic groups who commit similar crimes.[6]  Similarly, no one has alleged that members of those groups have been overcharged in comparison to the charges filed against members of other ethnic groups.

B.    THERE WERE NO SUBSTANTIAL VIOLATIONS OF THE JSSA WHICH REQUIRE DISMISSAL OF ALL INDICTMENTS RETURNED BY GRAND JURIES

1.    Introduction

Hernandez-Estrada contends that there were substantial violations of the JSSA which requires the dismissal of all indictments returned by grand juries in the Southern District of California.  We disagree.

---

[5]    We understand that as to the alleged violations of the JSSA, defense counsel is apparently aided and abetted by the provisions of 28 U.S.C. § 1867(d) (no "need to prove prejudice as a condition of judicial intervention when substantial noncompliance is established") and its legislative history quoted by Hernandez-Estrada.

[6]    Indeed, in the case of Hispanics, it is unimaginable that such an allegation could be made, much less sustained, considering the number of illegal aliens who are simply returned to or deported to their home countries, rather than being charged with one or more immigration related offenses.

2.    Standard of Review

"We review independently and non-deferentially a challenge to the composition of grand and petit juries." (Citation omitted.)  Sanchez-Lopez, 879 F.2d at 546.  "The test for a constitutionally selected jury is the same whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act."  Id.

3.    The Merits

a.    Jury Selection and Service Act of 1968

(1)    Constitutional Violation of JSSA Requires Showing of Underrepresentation

As we state above, for alleged violations of the JSSA, "[t]he test for a constitutionally selected jury is the same whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act." Sanchez-Lopez, 879 F.2d at 546.[7]  This Court has "consistently held that absolute disparities below 7.7% are insubstantial and constitutionally permissible."  United States v. Cannady, 54 F.3d 544, 548 (9th Cir. 1995); United States v. Rodriguez-Lara, 421 F.3d 932, 943-44 (9th Cir. 2005) ("We have declined to find underrepresentation of a distinctive group where the absolute disparity was 7.7% or lower.").  The JSSA allows a court to "swiftly dispose of [a motion] if it fails, on its face, to state a case for

---

[7]    "The stated policy of the JSSA is that 'all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.'"  Esquivel,  88 F.3d at 725 (quoting  28 U.S.C. § 1861).

11

which a remedy could be granted." H.R.Rep. No. 90–1076, at 14 (1968), as reprinted in 1968 U.S.C.C.A.N. 1792, 1806.

Although Hernandez-Estrada alleges a constitutional violation of a fair cross section of the jury-eligible community under the JSSA, he fails to make the required showing. Most of his arguments are aimed at a statutory violation of the JSSA, which also fail for the reasons stated below. [AOB 15-30.] The district court, relying upon figures provided by Hernandez-Estrada's experts, found that Hispanics were not underrepresentation. [Id.] To the contrary, the district court properly found that for most of the years from 1999 to 2009, "the absolute disparity between the percentage of Hispanics in the citizen population aged 18 and over and the percentage of Hispanics on the qualified wheel (excluding individuals who did not report ethnicity) is negative." [ER 5.] As Hernandez-Estrada has not met his burden, his claim that jury selection process constitutes a constitutional violation under the JSSA must be rejected, and his claim under the Sixth Amendment, which is discussed in Section D below, must also be rejected for the same reason.

(2)    Only Substantial Statutory Violations Qualify

Alleged pure statutory violations of the JSSA are:

allowed only for '**substantial failure to comply with the Act**.' Technical violations are insubstantial where they do not frustrate the Act's goals of obtaining jury lists that are a cross-section of the community, allocating jury duty fairly among the citizenry, and determining disqualifications, excuses, exemptions and exclusions on the basis of objective criteria only.

12

United States v. Erickson, 75 F.3d 470, 477 (9th Cir. 1996) (emphasis added) (citing and quoting United States v. Nelson, 718 F.2d 315, 318 (9th Cir. 1983)).  Nelson tells us:

> The legislative history noted that the definition of "substantial" would be left to the process of judicial decision. H.R.Rep. No. 1076, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 1792, 1794 ("House Report").
>
> Technical violations are insubstantial where they do not frustrate the Act's goals.  The two important principles underlying the Act were random selection from voter lists and exclusions on the basis of objective criteria only, as the best methods for obtaining jury lists that are a cross-section of the community, allocating jury duty fairly among the citizenry, and eliminating impermissible discrimination and arbitrariness. House Report at 1793-94.

Id. (Citation omitted.)  "[A]ny exercise of discretion [by the persons screening prospective jurors], or extra-statutory, subjective self-screening criterion of willingness to serve," is not permitted.  Id. (citation omitted). "The burden [is] on [the litigant alleging violation] to present facts constituting a substantial violation."  Id. at 319.

Despite being provided raw data in the form of the juror questionnaires from the 2009 jury wheel that was analyzed by Hernandez-Estrada's experts, and the district court ordering the jury clerk to produce a new AO-12, Hernandez-Estrada did not present sufficient evidence of a violation that frustrates the purpose of the JSSA. This Court has previously found that the Southern District of California is in compliance with the JSSA.  Esquivel, 88 F.3d at 728 ("The jury selection method used in the Southern District of California is that which is prescribed by the JSSA.").  See

13

United States v. Santos, 588 F.2d 1300, 1303 (9th Cir. 1975) ("Minor ambiguities or inconsequential omissions are disregarded as De minimus."). The district court properly determined after reviewing Hernandez-Estrada's claims that he did not establish "a substantial violation of the JSSA." [ER 2.]

(3)    Hernandez-Estrada Is Not Entitled to a Jury of His Choosing

Over 35 years ago, the Supreme Court in Taylor v. Louisiana, clarified that the fair cross-section requirement "impose[s] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition[.]" 419 U.S. 522, 538 (1975) (citations omitted) See, Nelson 718 F.2d at 319-20. This Court also noted that there is no requirement that a grand jury be a statistical mirror of the community. United States v. Potter, 552 F.2d 901, 903 (9th Cir. 1977) abrogated on other grounds by United States v. Brady, 579 F.2d 1121 (9th Cir. 1978). As discussed below in Section C, Hernandez-Estrada has failed to make the necessary showing that the juries need be selected by any method other than that used in the Southern District of California.

b.    Jury Service Requires English Proficiency

The history of the JSSA reflects dual concerns with a fair jury selection process and selection of competent jurors. All grand and petit jurors must have the ability to speak English, as well as read, write and understand English with sufficient proficiency to fill out satisfactorily the juror qualification form. 28 U.S.C.

14

§ 1865(b)(2) & (3); see Esquivel, 88 F.3d at 726. The importance of selecting competent jurors who are sufficiently proficient in English to understand proceedings and participate meaningfully in deliberations is reflected in the policy statements of the JSSA, as well as in case law.

> All who are concerned with fair jury selection are concerned as well that juries be competent to perform the tasks assigned to them. The jury must be able to listen to the evidence and evaluate it sensibly, to comprehend the instructions given on the governing law, and to make its decisions wisely and honestly[.]

H.R. Rep. No. 1076.

Where deficiencies in the process of selecting grand and petit jurors led to a serious risk that those selected did not have a sufficient proficiency in English to understand proceedings in which they were to participate, the Ninth Circuit dismissed the indictment. United States v. Okiyama, 521 F.2d 601 (9th Cir. 1975). The First Circuit Court of Appeals upheld a district court's dismissal of prospective jurors who lacked English proficiency, including an individual who completed the questionnaire in English, but indicated "trouble reading or understanding English." United States v. Candelaria-Silva, 166 F.3d 19, 29-30 (1st Cir. 1999). Here, the district court noted that "the level of English language ability needed to serve as a juror is difficult to quantify." [ER 13.]

There is a national interest in using English for court proceedings. Because of this national interest, the First Circuit has repeatedly rejected challenges to the English language requirement for federal jury service in Puerto Rico even where it results in the exclusion of a significant portion of the population. United States v. De La Paz-

15

Rentas, 613 F.3d 18 (1st Cir. 2010); United States v. Flores-Rivera, 56 F.3d 319, 326 (1st Cir. 1995) (quoting United States v. Aponte-Suarez, 905 F.2d 483, 492 (1st Cir. 1990)); United States v. Benmuhar, 658 F. 2d 14, 19-20 (1st Cir. 1981). When the issue of English language proficiency and whether it impairs the performance of a juror's duties is raised, trial courts are well within their discretion to dismiss or retain a juror even over the defendant's objection. See, e.g., United States v. Speer, 30 F.3d 605, 611 (5th Cir. 1994) (no abuse of discretion where, over defendant's objection, juror was excused because trial court believed that the other jurors would not be able to communicate with excused juror who "probably would detract from [the jury process] by causing difficulty in the deliberations."); United States v. Campbell, 544 F.3d 577 (5th Cir. 2008) (district court properly determined that manifest necessity existed to declare mistrial when evidence suggested that juror's difficulties understanding English prevented him from communicating and participating in the jury deliberative process); United States v. Jerra, No. 06-50081, 2007 WL 580099 (9th Cir. 2007) (unpublished) (citing Speer and affirming the dismissal of a juror after the juror revealed that he was having difficulty following the proceedings because of his limited English comprehension); United States v. Paulk, 372 Fed. Appx. 971, 2010 WL 1476025 (11th Cir. 2010) (unpublished) (upholding trial court's dismissal of juror with limited understanding of English).

In the context of Batson challenges, this Court has held that English language difficulties is a race-neutral reason to exercise a peremptory strike. United States v. Changco, 1 F.3d 837, 840 (9th Cir. 1993) ("If the prosecutor had doubts about the

16

ability of Maldia or Delacruz to follow the events of the trial, comprehend the judge's instructions or deliberate effectively with the other jurors, she had ample grounds for striking them[.]").

The California Supreme Court recently examined the state's requirement that prospective jurors "possess sufficient knowledge of the English language." (CA Code Civ. Proc., § 203, subd. (a)(6)) and denied a challenge that the excusal of prospective jurors who lack English proficiency is unconstitutionally vague. People v. Eubanks, 53 Cal. 4th 110, 130 (2011) ("[T]he phrase possess sufficient knowledge of the English language means sufficient knowledge of the English language to understand the legal proceedings and the evidence upon which a juror would base his or her decision in any given case. Defendant's speculative claim to the contrary, there is nothing in the record that suggests that individuals who received a jury summons in defendant's case improperly determined that they possessed insufficient knowledge of the English language to sit as a juror in a trial conducted in English."). In Eubanks, the California Supreme Court also denied the claim that defendant's right to equal protection was violated by excluding Hispanics who lacked English proficiency. 266 P.3d at 319.

> (c)   English Language Proficiency in Southern
>        District of California

"The able district judges in the Southern District were cognizant that the district, consisting of two counties on the border with Mexico, would likely

have many Hispanic residents who had not yet attained . . . English proficiency[.]"
United States v. Artero, 121 F.3d at 1261 (9th Cir. 1997).

While it was not possible to readily obtain data from the Census website for Imperial and San Diego Counties that selected for U.S. citizenship, English language ability, and age 18 and above, there are some poignant figures from American Community Survey ("ACS") data regarding the limited English proficiency of the U.S.-born Spanish-speaking population age 5 and older, which were submitted in response to the motion to dismiss. [SER 48-49.] In short, approximately 20% of the population of Spanish-speaking native[8] U.S. citizens in Imperial County age 5 and older speak English less than "very well." Similarly, approximately 19.7 % of the population of Spanish-speaking native U.S. citizens in San Diego County age 5 and older speak English less than "very well." [SER 48-49.] Some of the limited English proficiency is explained by the fact that both counties border Mexico and have a population of native U.S. citizens born abroad or who were born in California, but raised elsewhere. [SER 50-73.] This is a population that would not have to comply with the English language requirement for naturalization as they are citizens by birth. Furthermore, as the district court noted, the level of English language proficiency for purposes of a naturalization examination is lower than that required for jury deliberations. Hernandez-Estrada, Order at 12 [ER 12.]

_____

[8]   The term "native" "includes anyone who was a U.S. citizen or a U.S. national at birth, whether born in U.S. state or terrritory, or abroad of a U.S. citizen parent. [ER 143 (citing to ACS 2009 Subject Definitions).]

18

During argument, the district court recognized that the parties have seen situations where "[t]he difficulty they [jurors] would have would be in deliberating, expressing themselves in deliberations. But in terms of hearing the evidence and understanding the evidence, it seems to me that there are jurors who have a good sense of understanding. It's just more difficult to speak it than to understand a language." [ER 101.] This Court recognized in <u>Artero</u>, that the district judges recognized that the Southern District of California is uniquely situated along the U.S./Mexico border and some Hispanics would not have attained sufficient English proficiency for jury service. 121 F.3d at 1261.

The educational achievement gap faced by students learning English along the U.S./Mexico border was recently highlighted in Justice Breyer's dissent in <u>Horne v. Flores</u>, which examined an equal educational opportunity challenge concerning English learning students in the Nogales, Arizona, section of the United States/Mexico border and noted that "approximately 90% of Nogales' students were, or had been, enrolled in the English-learning program in 2006." 129 S. Ct. 2579, 2627 (2009) (citation omitted). It is also noteworthy that at Nogales' sole high school only 28% of English learning students passed Arizona's content-based standardized tests. 129 S. Ct. at 2625.[9]

---

[9]    Justice Breyer summarized the stakes of increasing English proficiency in this border community.

The case concerns the rights of Spanish-speaking students, attending public school near the Mexican border, to learn English in order to live their lives in a country where English is the predominant language. In a

d.    Hispanics Who Indicated That They Lack English
Language Proficiency

(1)    Overview of Questionnaires and Jury
Wheel Data

There is no dispute between the parties that the wording regarding English language proficiency, Question 4, on the juror questionnaire is outdated. It appears that this same outdated wording is used on juror questionnaires throughout the country in federal courts. [ER 74.] Hernandez-Estrada contends that Hispanic or Latino citizens are over-excluded due to the higher level of English proficiency that an outdated version of Question 4 requires as opposed to the actual requirement in the JSSA. [AOB 13-16.] However, the district court specifically found that "the District's use of outdated language in Question 4 is a technical violation that does not warrant dismissal of the indictment." [ER 12.] The district court specifically rejected

Nation where nearly 47 million people (18% of the population) speak a language other than English at home, U.S. Dept. of Commerce, Economics and Statistics Admin., Census Bureau, Census 2000 Brief: Language Use and English–Speaking Ability 2 (Oct.2003), it is important to ensure that those children, without losing the cultural heritage embodied in the language of their birth, nonetheless receive the English-language tools they need to participate in a society where that second language "serves as the fundamental medium of social interaction" and democratic participation. Rodríguez, Language and Participation, 94 Cal. L.Rev. 687, 693 (2006). In that way linguistic diversity can complement and support, rather than undermine, our democratic institutions. Id., at 688.

Flores, 129 S. Ct. at 2631.

20

Hernandez-Estrada's contention that Hispanics are over-excluded from the qualified jury wheel because of the outdated language in Question 4. [ER 8.]

Furthermore, Hernandez-Estrada's assumption overlooks the fact that many questionnaires are not returned precisely due to a lack of English language proficiency to be able to read and understand the questionnaire and the instructions for returning it, which are in English. See, e.g., United States v. Rioux, 97 F.3d 648, 658 (2d Cir. 1996) (inability to serve juror questionnaires returned as undeliverable was not due to jury selection system and Rioux failed to show that any one of those undeliverable questionnaires went to a Black or Hispanic).

> e. Hernandez-Estrada Does Not Meet His Burden of Showing That the Outdated Question About English Language Proficiency on the Juror Questionnaire Amounts to a Substantial Violation of JSSA
>
> (1) Hernandez-Estrada Fails to Show Arbitrariness in the Jury Selection Process

The district court accepted Hernandez-Estrada's figures that 12,250 prospective jurors returned their questionnaires but only 6,625 made it on to the qualified 2009 jury wheel. [ER 8.] Approximately 5,625 Hispanic or Latino citizens were disqualified, excused, or exempted from jury service in the Southern District. [ER 8.] Of these 5,625 disqualified, excused, or exempt Hispanic or Latino jurors, approximately 1918 Hispanic prospective jurors answered "no" to Question 4. [SER 139-207.] Approximately 14.39% or 276 of them had the questionnaire completed by another person. [Id.] Of those 1,918 Hispanic prospective jurors, approximately 498 were disqualified on another ground for excuse, such as: a) being

21

over 70 years' old; b) having a medical disability; c) caring for young children or being an infirmed adult; d) not residing in the district; or e) having a criminal conviction. [Id.] After accounting for the above reasons for exclusion, approximately 1,420 Hispanic or Latino prospective jurors remained. [ER 151.]

It is noteworthy that of 12,250 Hispanics who returned questionnaires, only approximately 1,420, or 11.59% were excluded based on their response to Question 4 regarding English proficiency. In fact, 74.8% of the 5,625 Hispanics who were excluded, were excluded for reasons other than their response to Question 4. [ER 8.] Close examination of their answers to the juror questionnaire supports that many should be excluded because they self-reported that they lack the English language skills necessary to perform jury duties. [ER 432, 466, 482, 484; SER 74-76.] For example, of those 1,420 prospective jurors who indicated a lack of English language proficiency, many also answered Question 14, requesting to be excused from jury service and completed the oval corresponding to 4 even though 4 is for volunteer safety personnel. [ER 301, 319, 351; SER 139-207.] In addition, several of those 1,420 prospective jurors who indicated a lack of English language proficiency, wrote remarks in Spanish. [SER 74-76, 99-138.]

There was no arbitrariness in disqualifying prospective jurors who lacked English proficiency because, in addition to Hispanics or Latinos, and Asians, others who did not indicate their race or ethnicity, but responded "No" to Question 4 or requested to be excused based on a concern with their English language proficiency, were also excused or disqualified. [SER 77-98.] Furthermore, Hernandez-Estrada

22

recognizes that more than 30% of all who answered "No" to Question 4 were not Hispanics. [AOB 23.]

           (2)      Flawed Assumption About Education and Occupation as a Proxy for Language Proficiency

The district court found that Hernandez-Estrada "speculates that such individuals [who work in certain professions and have a high school/GED equivalent education] answered "No" to Question 4 because they assumed that they were required to have an ability to read, write, and understand English beyond what was necessary to fill out the juror qualification form, Defendant has not provided sufficient evidence to support this position." [ER 9.] Indeed, the district court noted that some individuals may have indicated a lack of English language proficiency "in hopes of being disqualified from jury service." [Id.] The district court recognized that without statistics regarding the percentage of jury-eligible Hispanics who have sufficient English proficiency to perform jury duty, it "will not assume that individuals who have a high school/GED equivalent education and jobs in the community necessarily can speak English with this degree of proficiency." [ER 11.]

Furthermore, the district court noted that the questionnaire does not ask where the potential juror was educated. [Id.] Some Hispanic prospective jurors received their education in Spanish outside the United States. [SER 99-108.] Other Hispanic jurors work abroad in occupations where English proficiency may not be required. [SER 109-117; ER 11.] ("it is possible that the jobs are in primarily Spanish-speaking

23

communities and/or the interaction with the English-speaking public is not required or is limited."). [Id.]

Regarding Hispanic prospective jurors who responded yes and then indicated that there was some limitation in their English language proficiency, many also requested to be excused. [ER 481, 484; SER 118-138.] The district court noted that the jury clerk should not make determinations of juror qualifications based on understanding of legal terms or general level of fluency, but the district court determined that Hernandez-Estrada had not established a substantial violation of the JSSA. [ER 13.]

The bottom line is that Hispanic prospective jurors' self-reported assessment[10] of how limited English language proficiency impairs their ability to exercise jury duties shows that competent jurors were selected in a non-discriminatory manner that did not run afoul of the purposes of the JSSA. See United States v. Goodlow, 597 F.2d 159, 161-62 (9th Cir. 1979) (unauthorized dismissal of men as well as women who have small children at home did not constitute substantial noncompliance because it did not frustrate goals of randomness and objectivity); United States v. Maskeny, 609 F.2d 183, 193 (5th Cir. 1980) (excusal by clerks did not constitute substantial violation where there was no showing that the clerk had made a significant number of erroneous determinations); United States v. Evans, 526 F.2d 701, 706 (5th Cir.

---

[10]     " Responses to the qualification form constitute the primary source of [] evidence [to determine whether a juror is disqualified]."  H.R. Rep. No. 1076.

1976) (clerk's practice of excusing jurors did not constitute substantial failure where he used no subjective criteria).

f.     <u>JSSA Does Not Require an Error-Free Process</u>

Hernandez-Estrada points to prospective jurors who should not have been disqualified based on their response to Question 4. [AOB 22-29; ER 461-84.] The JSSA does not impose that the process is error-free; rather, the mandate is that "objective" criteria are used in the decision-making process. <u>Nelson</u>, 718 F.2d at 318; see <u>United States v. Bearden</u>, 659 F.2d 590, 607 (5th Cir. 1981) (wrongful exclusion of 495 potential jurors from qualified wheels, for reasons of age, occupation, intradistrict moves and prior jury service, was not a substantial violation of JSSA, where number of errors was insignificant in relation to large number of prospective jurors handled by clerk's office and errors were not based on subjective criteria reflecting either discriminatory intent or effect, but were instead result of occasional misinterpretation or misapplication of technical statutory criteria).

Here, English language proficiency is an objective criterion and was applied to select competent jurors in a non-discriminatory manner that did not run afoul of the purposes of the JSSA. Screening for English language proficiency was not based on race, national origin, or any other prohibited ground. <u>See</u> <u>Rioux</u>, 97 F.3d at 659 (disqualification due to lack of English proficiency is reasonable and was not abused by district jury selection plan). In addition to Hispanics or Latinos, and Asians, others who did not indicate their race or ethnicity, but responded "No" to Question 4 or

25

requested to be excused based on a concern with their English language proficiency were also excused or disqualified.  [SER 77-98.]

The Tenth Circuit found that where prospective jurors were initially selected for the master jury wheel from voter registration list of each county and the clerk testified as to the jury selection method that he deemed disqualified prospective jurors who replied in the questionnaire that they could not read, write, speak and understand the English language, there was no showing of substantial failure to comply with the JSSA.  United States v. Tijerina, 446 F.2d 675, 680-81 (10th Cir. 1971); United States v. Test, 550 F.2d 577 (10th Cir. 1976) (provision mandating disqualification of persons unable to read, write and understand English language with sufficient proficiency to complete juror qualification form was constitutional where persons disqualified did not constitute cognizable group and no evidence that systematic exclusion of some other cognizable group resulted from such disqualification).  In Tijerina, "where a qualified answer was given to the language question, the determination was made from information in response to the questionnaire as a whole, usually from the amount of education shown."  446 F.2d at 680.

g.    Alleged Failure to Supervise Jury Clerks Does Not Amount to Substantial Violation of JSSA

Hernandez-Estrada also claims that in addition to improperly disqualifying prospective Hispanic or Latino jurors who answer no to Question 4, there is insufficient supervision of the juror qualification process based on examples of

26

prospective jurors who are disqualified even though they answered "yes" to Question 4. As the district court properly determined, these are technical violations and "there is no evidence that the jury clerk was using subjective criteria in disqualifying the jurors in question. [ER 13 (citing United States v. Layton, 519 F. Supp. 946, 954-55 (N.D. Cal. 1981)).]

The guidance that the jury clerks receive regarding Question 4 of the questionnaire is as follows: "[t]he court's main responsibility is to ensure that those who do serve can speak and read English. There is no corresponding duty necessarily to ensure that all those who are rejected in the review process have invariably given honest answers to the literacy inquiry." [ER 117-18.]

The JSSA does not require that the process is error-free; rather, the mandate is that "objective" criteria are used in the decision-making process. Nelson, 718 F.2d at 318. Any missteps in the lack of supervision of jury clerks reviewing responses to Question 4 in the selection of prospective jurors are technical violations. As discussed above, Hispanic prospective jurors' self-reported assessment of how limited English language proficiency impairs their ability to exercise jury duties shows that competent jurors were selected in a non-discriminatory manner that did not run afoul of the purposes of the JSSA. As demonstrated in the record and noted by the district court, English language proficiency is a nuanced area. Furthermore, an objective criterion, prospective juror's self-assessment of limited English language proficiency accompanied by a request to be excused, was applied to the vast majority of questionnaires. [SER 74-138.]

27

In <u>United States v. Carmichael</u>, 560 F.3d 1270 (11th Cir. 2009), the Eleventh Circuit held that the jury administrator's policy of granting virtually all deferral requests was not a substantial violation because it did not result in something other than a fair cross-section of the community and did not provide an opportunity to discriminate against any cognizable group. 560 F.3d at 1278. The selection of more than 15% of previously deferred jurors while a technical violation, was performed using jury selection software and did not violate the purpose of the JSSA to prevent discrimination. 560 F.3d at 1279.

Cases establish that "determining the substantial compliance question requires that the alleged violations of the Act be weighed against the goals of the statute," which are (1) assuring a random selection from a fair cross-section, and (2) assuring that selection, disqualification, and excusal is accomplished in an objective manner." See <u>Goodlow</u>, 597 F.2d at 161-62 (unauthorized dismissal of men as well as women who have small children at home did not constitute substantial noncompliance because it did not frustrate goals of randomness and objectivity); <u>Maskeny</u>, 609 F.2d at 193 (dismissal by clerks did not constitute substantial violation where there was no showing that the clerk had made a significant number of erroneous determinations); <u>Evans</u>, 526 F.2d at 706 (clerk's practice of excusing jurors did not constitute substantial failure where he used no subjective criteria).

Another example of a technical violation that did not rise to the level of a substantial violation was found in examining the practice of granting permanent rather than temporary excusal where permanent excusals were an insignificant number of the

28

total jury pool.  <u>Bearden</u> 659 F.2d at 607.  In <u>Bearden</u>, the Fifth Circuit noted that while the clerk personnel should have consulted the judges and the Clerk of Court more closely when uncertainties arose with particular jurors or the general criteria to be used, the failure to do so, either in itself or when combined with the erroneous exclusions, does not warrant dismissal of the indictments.  <u>Id.</u> Likewise, here, the district court made a similar finding.  [ER 13.]

In sum, as the case law indicates, the district court properly determined that any missteps in the selection of prospective jurors based on reviewing responses to Question 4 are technical violations, and not a substantial failure to comply with the JSSA.  Indeed, Hernandez-Estrada does not show that such flaws frustrate the goals of the JSSA by resulting in impermissible discrimination or arbitrariness as the district court found there was "no evidence that the jury clerk was using subjective criteria in disqualifying the jurors[.]" [ER 13.]

> h.    An Alleged Lack of Discretionary Follow-up With Prospective Jurors Who Did Not Indicate Their Race/Ethnicity Does Not Excuse Hernandez-Estrada From His Burden of Showing a Substantial Violation of the JSSA

The Ninth Circuit has previously held that jury questionnaires are sufficient where they specifically ask each prospective juror whether he or she can read, speak, and understand English, since there is sufficient information from which to determine English language proficiency of prospective jurors.  <u>Santos</u>, 588 F.2d at 1303.  Furthermore, the failure to follow up regarding language proficiency does not constitute substantial noncompliance with the JSSA because "section 1864(a)

29

clearly provides for discretionary follow up by the clerk or by the jury commissioner." Id. The United States Supreme Court has recognized that the "fair-cross-section principle must have much leeway" in developing a jury selection system. Taylor v. Louisiana, 419 U.S. 522, 538 (1975).

Indeed, the legislative history of the JSSA reflects that "[i]t is not the intention of the committee to authorize the clerk or jury commission to carry on subjective interviews or to substitute the questioner's subjective judgment for facts that ascertain objectively whether the potential juror is qualified under the criteria of the [JSSA]." H.R. Rep. No. 1076, 1802.

While Hernandez-Estrada recognizes the holding in Santos that there was no substantial violation, Hernandez-Estrada attempts to distinguish the instant case as based on "systemic" deficiency in the selection process. [AOB 23.] Hernandez-Estrada's claim is unavailing as there was ample opportunity to search through raw juror data to attempt to present evidence of a substantial violation. The district court, who was already familiar with many of the issues raised here as it had previously denied in 2009 a similar challenge mounted by defense counsel, examined Hernandez-Estrada's claims and determined that any missteps are technical violations, and not a substantial failure to comply with the JSSA. The district court specifically deferred to the Administrative Office's interpretation of 28 U.S.C. § 1864(a) and found that a "any violation of this section by failure to return questionnaires that omit race/ethnicity information is a technical one. [ER 15 (citing United States v. Marcano, 508 F. Supp. 462, 468 (D. Puerto Rico 1980)).] Indeed, Hernandez-Estrada has not

30

shown either underrepresentation of Hispanics or arbitrariness in the juror selection process-which are required to show that the purposes of the JSSA were frustrated. See Rioux, 97 F.3d at 658 (2d Cir. 1996) (denying a challenge where Rioux protested "that he could not show such figures because the Clerk had no list of the persons whose questionnaires were undeliverable. Rioux's counsel, however, had unrestricted access to all the envelopes returned as undelivered[.]").

        j.      Delayed Completion of Jury Selection Plan Forms Does Not Excuse Hernandez-Estrada From His Burden of Showing a Substantial Violation of the JSSA

Hernandez-Estrada complains that the Southern District of California's failure to monitor jury representativeness unless prompted by litigation is a substantial violation of the JSSA. [AOB 47-51.] The district court noted that Hernandez-Estrada had the AO-12 forms for the decade preceding 2009 and properly determined that the fact that the AO-12 "forms should have been prepared sooner does not in and of itself constitute a substantial JSSA violation warranting relief." [ER 17.] The district court noted that Hernandez-Estrada's argument that undeliverable questionnaires could be from high concentrations of minority populations is purely speculative. [ER 17 n.5.] See Rioux, 97 F.3d at 658 (inability-to-serve juror questionnaires returned as undeliverable was not due to jury selection system and Rioux failed to show that any one of those undeliverable questionnaires went to a Black or Hispanic).

k.     Summary

All of the above demonstrates that Hernandez-Estrada has not established any <u>substantial</u> violations of the JSSA.  Therefore his contention that the Indictment should be dismissed for such violations should be dismissed as meritless.

C.     THERE IS NO EVIDENCE THAT DEMONSTRATES THAT THE JSSA HAS BEEN VIOLATED BY USING ONLY VOTER LISTS TO SELECT MEMBERS OF THE GRAND JURIES

1.     Introduction

Hernandez-Estrada asserts that "the Southern District's exclusive use of a juror source list [derived solely from voter registration lists] substantially and persistently underrepresents African-American and Hispanic citizens [and, therefore] violates the Jury Act."  [AOB 51.]  He notes that, "[t]he Southern District has found that, 'the persons whose names appear on the registered voter lists represent a fair cross section of the community in the Southern District of California.'   Local Civil Rule 83.10(c)(4)."  [Id.] He then goes on to try and demonstrate why the voter-list-only approach is a violation of the JSSA, and why the juror-eligible list should be supplemented by resort to Department of Motor Vehicles ("DMV") lists.  [AOB 51-62.]  We disagree.

2.     Standard of Review

There are no cases which speak to the standard of review relating to using only voter lists to select members of the grand juries.  However, since this issue relates to the underrepresentation contentions, we suggest the standard of review should be the

32

same as stated in <u>Sanchez-Lopez</u>, 879 F.2d at 546 ("We review independently and non-deferentially a challenge to the composition of grand and petit juries." (Citation omitted.)).

    3. <u>The Merits</u>

     a. <u>Introduction</u>

  In <u>Esquivel</u>, defense counsel had contended on behalf of their client "that although drawing potential jurors from voter registration lists (or the lists of actual voters) <u>may comply</u> with the JSSA, the exclusive use of those lists result in an underrepresentation of Hispanics in the jury pool." 88 F.3d at 726. This Court concluded that, "[t]he jury selection method used in the Southern District of California is that which is prescribed by the JSSA," and found no constitutional violation. 88 F.3d at 728. Defense counsel has now reversed itself and now contends, on behalf of this new client that drawing potential jurors from voter registration lists (or the lists of actual voters) <u>does not</u> comply with the JSSA.

     b. <u>Exclusive Use of Voter Registration Lists</u>

  Concerning the exclusive use of voter registration lists, over 30 years ago, this Court stated: "As this circuit recently made clear, appellant in order to prevail must prove that the exclusive use of voter registration lists resulted in a <u>substantial</u> underrepresentation in the jury pool of a cognizable group in the community." (Emphasis added.) <u>United States v. Kleifgen</u>, 557 F.2d 1293, 1296 (9th Cir. 1977). Shortly thereafter, this Court elaborated: "[T]he legislative history [of the JSSA] indicates that the use of supplemental sources should be used only when the voter lists

33

deviate <u>substantially</u> from the makeup of the local community." (Emphasis added.)

<u>United States v. Brady</u>, 579 F.2d 1121, 1131 (9th Cir. 1978).

The legislative history of the JSSA reflects dual concerns with a fair jury selection process and one where individuals selected as jurors are competent to serve.

> All who are concerned with fair jury selection are concerned as well that juries be competent to perform the tasks assigned to them. The jury must be able to listen to the evidence and evaluate it sensibly, to comprehend the instructions given on the governing law, and to make its decisions wisely and honestly. The committee has felt very strongly, therefore, that if juries are to perform satisfactorily, the quality of jurors must be maintained. The committee has approved this bill only upon determining that it includes a number of provisions sufficient to attain high levels of juror competence.
>
> The initial line of defense against incompetence is the requirement that voter lists be used as the primary source of potential jurors. Voter lists contain an important built-in screening element in that they eliminate those individuals who are either unqualified to vote or insufficiently interested in the world about them to do so.

H.R. Rep. No. 1076 (1968), <u>reprinted in</u> 1968 U.S.C.C.A.N. 1792, 1795-1796.

Earlier, this Court had found that "[the Act] and its legislative history clearly contemplate that the use of sources other than voter lists will be the <u>exception</u> rather than the rule." (Emphasis added.) <u>United States v. Ross</u>, 468 F.2d 1213, 1216 (9th Cir. 1972).

Relevant to Hernandez-Estrada's contentions that "a substantial portion of eligible voters in San Diego and Imperial Counties are not registered, and thus would never have the opportunity to be considered for service on federal juries" [AOB 56], the <u>Brady</u> Court also stated: "It is of no importance that [members of an ethic group]

34

may have a tendency not to register to vote." 579 F.2d at 1133. <u>United States v.</u>

<u>Cecil</u>, 836 F.2d 1431 (4th Cir. 1998), agrees.

> The use of VRLs as the source for jury selection in federal courts has been expressly sanctioned by Congress in 28 U.S.C. § 1863(b)(2). In so doing Congress obviously recognized that such use would necessarily exclude from jury service those individuals, whatever their race, color, gender, or age, who had not registered to vote, but it determined that this use of the voter registration list or list of voters would meet the constitutional requirement of a 'fair cross section' of the community, since no cognizable group would be systematically excluded.

836 F.2d at 1445. <u>See also</u> <u>United States v. Garcia</u>, No. 96-20149, 1997 WL 450169

*5 (5th Cir. 1997) ("Hence, the 'failure of an identifiable group to register and vote

does not render invalid the selection of jurors from a voter registration list.'" (quoting

<u>United States v. Brummitt</u>, 665 F.2d 521, 528 (5th Cir. 1981)) (unpublished);

<u>United States v. Odeneal</u>, 517 F.3d 406, 412 (6th Cir. 2008) ("Defendants argue that

by using voter registration lists instead of other methods, such as drivers license

registrations, African-Americans are systematically excluded <u>because</u>

<u>African-Americans register to vote in lower proportions than other groups</u>.

Defendants' argument is <u>not persuasive</u>." (Emphasis added.)); <u>United States v. Perry</u>,

152 F.3d 900, 904 (8th Cir. 1998) ("The mere fact that one identifiable group of

individuals votes in a lower proportion than the rest of the population does not make

a jury selection system illegal or unconstitutional." (Citation Omitted.)); <u>Floyd v.</u>

<u>Garrison</u>, 996 F.2d 947, 949 (8th Cir. 1993) ("Absent proof that obstacles are placed

in the path of blacks attempting to register to vote, voter registration lists may be used

as the sole source for selecting jury pools." (Citations Omitted.)).   "These courts

unanimously agree that in the absence of different registration standards, affirmative barriers to registration or deliberate interference with the registration process – in other words, in the absence of affirmative governmental action – private voting patterns that contribute to underrepresentation in jury pools do not constitute systematic exclusion." United States v. Rioux, 930 F. Supp. 1558, 1573 (D. Conn. 1995), affirmed by Rioux, 97 F.3d at 663 ("we affirm the district court's determinations in all respects").

Hernandez-Estrada asks this Court to consider "our Nation's history of discrimination against minorities in the voting process" [AOB 58], as a reason why the voter registration lists should be discounted as the exclusive source for the juror wheel lists. This contention is best answered by United States v. Lewis, 10 F.3d 1086, 1090 (4th Cir. 1993) ("Lewis also argues that a history of discrimination in South Carolina amounts to systematic exclusion of African-Americans from voting lists. . . . Lewis offers neither evidence of current discrimination nor evidence of impediment to any group to register to vote."). We say no more.

Brady continued, "[t]he legislative history of the Act specifies that, '(n)o economic or social characteristics prevent one who wants to be considered for jury service from having his name placed in the pool from which jurors are selected.' 1968 U.S. Code Cong. & Admin. News, p. 1795." 579 F.2d at 1133. Accord, United States v. Luong, 255 F. Supp. 2d 1123, 1130 (E.D. Cal. 2003) (citing Brady (Vietnamese defendants alleging that African-Americans, Hispanics, and "all minority groups combined" are underrepresented)).

36

Hernandez-Estrada has made no showing why the exclusive use of the voter registration lists in anyway violates the JSSA or the Constitution. There is no reason to change the present system even given his contentions relating to supplementation by DMV lists.

c.   Supplementation by DMV Lists

Concerning Hernandez-Estrada's assertion that the juror-eligible list should be supplemented by resort to DMV lists, this Court has not spoken directly to that issue. However, other circuits have, and their holdings ring true, to wit, no such supplementation is called for. See United States v. Garcia, No. 96-20149, 1997 WL 450169 (5th Cir. 1997) (unpublished):

> Furthermore, Garcia has not explained how a jury selection system based on both voter registration and drivers license lists would produce a jury wheel that would be more reasonable than that generated under the current system. Indeed, as evidenced by the testimony of Hardy given at the pre-trial hearing, such a system would likely be overly inclusive, as many people who would otherwise qualify for a drivers license would not be eligible to serve on juries.

1997 WL 450169 at *5. See also United States v. Odeneal, 517 F.3d 406, 412 (6th Cir. 2008) ("Defendants argue that by using voter registration lists instead of other methods, such as drivers license registrations, African-Americans are systematically excluded because African-Americans register to vote in lower proportions than other groups. Defendants' argument is not persuasive." (Emphasis added.)); United States v. Perry, 152 F.3d 900, 904 (8th Cir. 1998); United States v. Pritt, No. 11-10909, 2012 WL 265927 (11th Cir. 2012) (unpublished).

37

This Court should come to the same conclusion. Supplementation of the voter registration list is not needed.

    D.    THERE IS NO EVIDENCE THAT DEMONSTRATES THAT THE FIFTH AND SIXTH AMENDMENTS HAVE BEEN VIOLATED BY UNDERREPRESENTATION OF MINORITY GROUPS ON THE GRAND JURIES

        1.    <u>Introduction</u>

Hernandez-Estrada asserts that "failure to supplement unrepresentative source lists violates not only the jury act but the Fifth and Sixth Amendments as well." [AOB 62.] He further asserts that the constitutional violations occur because of the "[e]xclusive reliance on unrepresentative source lists." [Id.] We disagree.

        2.    <u>Standard of Review</u>

"We review *de novo* a Sixth Amendment challenge to the composition of a grand jury." <u>Torres-Hernandez</u>, 447 F.3d at 703. "This court must review 'independently and non-deferentially' a [Fifth Amendment] challenge to the composition of grand and petit juries." <u>United States v. Cannady</u>, 54 F.3d 544, 546 (9th Cir. 1995) (quoting <u>Sanchez-Lopez</u>).

        3.    <u>The Merits</u>

Concerning alleged violation of the Equal Protection Clause of the Fifth Amendment, there is:

    a three-step process for establishing a prima facie equal protection case: (1) establish that the group, of which the appellant is a member, is "one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied;" (2) prove the degree of underrepresentation "by comparing the proportion of the group in the

38

total population to the proportion called to serve as grand jurors, over a significant period of time;" and (3) discriminatory intent. The third step, discriminatory intent, may be established by showing that a selection procedure "is susceptible of abuse or is not racially neutral," thus supporting the presumption of discrimination raised by the statistical showing under step two. "Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case." In order to rebut the presumption of unconstitutional action, the state must show 'that permissible racially neutral selection criteria and procedures have produced the monochromatic result.'

Esquivel, 88 F.3d at 725 (citations omitted).

Concerning alleged violations of the Sixth Amendment's right to a fair cross-section of the community:

[A] . . . fair cross-section violation does not require the appellant to prove discriminatory intent or require that the appellant be a member of the "distinct," excluded group. Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). In Duren, the Supreme Court formulated a three-pronged test for establishing a prima facie violation of the Sixth Amendment fair cross-section requirement:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

Esquivel, 88 F.3d at 725.

After raising the constitutional issues, Hernandez-Estrada begs-off dealing with them by telling this Court that:

Mr. Hernandez-Estrada attempted to extensively litigate his constitutional claims below. But, the clerk's office's failure to keep reliable data on jury wheel demographics made it impossible for him to make the necessary showing of underrepresentation.

39

[AOB 62-63.] He explains that while "Mr. Hernandez-Estrada meets the first prong of both tests" [AOB 64], "[t]he failure to collect reliable race/ethnicity data makes it impossible for this Court to evaluate the second prong." [AOB 65.] He concludes:

> The failure of the clerk's office to compile the required data has created a situation where this Court is without reliable information to evaluate the second prong of Mr. Hernandez-Estrada's claims. He should not be penalized for the failure of the clerk's office to follow the command of the Jury Act.

[AOB 66.]

> Along the way, Hernandez-Estrada tells us that:

> Working with the only existing demographic data, Mr. Hernandez-Estrada presented expert evidence comparing the representation of Hispanics and African-Americans on the jury wheels with those in the community over the last decade. ER 485-515. But, as to the second prong, the district court found Mr. Hernandez-Estrada's claims failed.

[AOB 64.] He bemoaningly ascribes this failure to, among other things, "this Court's current benchmark for disparity articulated almost thirty years ago in United States v. Suttiswad, 696 F.2d 645, 648 (9th Cir. 1982), that essentially allows even the complete exclusion of minority groups that makeup less than 7.7% of the community." [AOB 65 n.21.]

Therefore, Hernandez-Estrada concedes that he has not established his Fifth and Sixth Amendment claims. He wants a data base of his choosing (i.e., voter lists plus DMV lists) in order to make better his claims of unconstitutional underrepresentation, and faults the Southern District's plan for not providing it to him. However, as we

40

point out above, the failure to use Hernandez-Estrada's list of choice is not a violation of the JSSA.

That being the case, Hernandez-Estrada's constitutional violation position and, more importantly, defense counsel's ongoing quest, will never be found viable.[11]  It should be stopped here and now.

---

[11]     Conjuring the images of Don Quixote is almost irresistible.

41

VI

CONCLUSION

For the foregoing reasons, the judgment should be affirmed.

Dated: March 19, 2012       Respectfully submitted,

LAURA E. DUFFY
United States Attorney

BRUCE R. CASTETTER
Assistant U.S. Attorney
Chief, Appellate Section
Criminal Division


s/ David Curnow
DAVID CURNOW
Assistant U.S. Attorney

s/ Victor P. White
VICTOR P. WHITE
Assistant U.S. Attorney

Attorneys for Plaintiff-Appellee
United States of America

42

C.A. No. 11-50417

CERTIFICATE OF COMPLIANCE

I certify that:

Pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached answering brief is:

___xx___ Proportionately spaced, has a typeface of 14 points or more and contains ___10,095___ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words), or is:

_____ Monospaced, has 10.5 or fewer characters per inch and contains words or _____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

Dated: March 19, 2012                    s/Victor P. White___
                                         VICTOR P. WHITE
                                         Assistant U.S. Attorney

C.A. No. 11-50417

<u>STATEMENT OF RELATED CASES</u>

Counsel for the Government is aware of no related cases.